United States District Court, Western District of Wisconsin

Case No. 25-cv-947-jdp

**Nathaniel Bacchus,**

**Plaintiff,**

v.

**Fleet Financial, Inc., d/b/a iLendingDIRECT LLC,**

**Defendant.**

**COMPLAINT (Jury Trial Demanded)**

**Introduction:** Plaintiff **Nathaniel Bacchus**, a Wisconsin resident, brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), to challenge a campaign of unauthorized telemarketing calls by **iLendingDIRECT, LLC**. Despite Plaintiff revoking consent by texting "STOP" — and receiving Defendant's confirmation of unsubscribe — Defendant placed **25** further telemarketing calls to Plaintiff's cell phone between November 8 and November 17, 2025. These calls originated from at least five rotating numbers in the 303 and 720 Colorado area codes, often placed after business hours. Plaintiff seeks statutory damages of $1,500 per call (totaling $37,500) for knowing or willful TCPA violations, injunctive relief to halt unlawful calling practices, and such further relief as the Court deems just and proper.

**Jurisdiction and Venue**

1. **Federal Question Jurisdiction:** This action arises under a federal statute (TCPA, 47 U.S.C. § 227). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

The U.S. Supreme Court has held that federal and state courts have concurrent jurisdiction over private TCPA lawsuits . Accordingly, Plaintiff's TCPA claims present a federal question properly heard in federal court (see *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), holding that TCPA suits arise under federal law and may be brought in federal court ).

2. **Personal Jurisdiction:** Defendant iLendingDIRECT, LLC (hereinafter "iLending") is subject to personal jurisdiction in Wisconsin. Defendant directed and conducted telemarketing calls into Wisconsin, purposefully availing itself of the state by targeting a Wisconsin consumer (Plaintiff) with unsolicited calls. Plaintiff's claims arise from these forum-related contacts. Exercising jurisdiction comports with fair play and substantial justice, as the TCPA is intended to protect consumers nationwide from unwanted calls .

3. **Venue:** Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District. Plaintiff received the unlawful calls on his cell phone in this District, where he resides.

4. **Intrastate/Interstate Commerce:** The calls at issue were interstate in nature, originating from area codes in Colorado and transmitted via interstate phone lines to Wisconsin. Congress enacted the TCPA in part to prevent telemarketers from evading state telemarketing laws by operating across state lines . Thus, federal law governs these interstate communications.

**Parties**

5. **Plaintiff:** Nathaniel Bacchus ("Plaintiff") is a natural person and resident of Wisconsin (Dane County). Plaintiff's cell phone number is assigned a Wisconsin area code and is used primarily for personal, non-business purposes. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

6. **Defendant:** Fleet Financial, Inc., d/b/a iLendingDIRECT LLC ("Defendant" or "iLending") is a business entity engaged in nationwide consumer lending and refinancing services, formerly known as iLendingDIRECT . Upon information and belief, iLending is organized under Colorado law (as Fleet Financial, Inc., d/b/a iLendingDIRECT ) with its principal office at 7257 S. Tucson Way, Englewood, Colorado 80112 . Defendant conducts business in Wisconsin by soliciting Wisconsin consumers via telephone to refinance auto loans or similar services. Defendant is a "person" as defined by 47 U.S.C. § 153(39) and a "telephone solicitor" engaging in "telephone solicitations" under the TCPA and associated regulations.

7. **Registered Agent:** For purposes of service of process, Defendant's registered agent is *Registered Agents Inc.*, 1500 N. Grant St., Ste. R, Denver, CO 80203 . (Plaintiff provides this information to facilitate proper service on Defendant's agent for process).

## Factual Allegations

8. **Plaintiff's Prior Contact and Revocation:** On or about early November 2025, Plaintiff interacted with Defendant's advertising regarding auto loan refinancing. Plaintiff may have initially provided his cellular telephone number to Defendant during an online inquiry or loan application. Any consent that might have been given was **revoked** on November 8, 2025, when Plaintiff replied "STOP" to a text message from iLending.

Immediately after sending "STOP," Plaintiff received a return text confirming that he had been **"unsubscribed"** and would no longer receive communications from iLending.

9. **Unauthorized Telemarketing Calls After Revocation:** Notwithstanding the confirmed opt-out, Defendant (or its agents acting on its behalf) **placed twenty-five (25) telemarketing calls** to Plaintiff's cell phone in the span of ten days (November 8–17, 2025). These calls were attempts to solicit Plaintiff to refinance his automobile loan or to purchase Defendant's financial services, thus constituting "telephone solicitations" under 47 C.F.R. § 64.1200(f)(14). The calls were frequent (multiple calls on many days), repetitive, and continued **even after normal business hours** (including several calls placed in the evening, around 8:00–9:00 PM local time, causing disturbance to Plaintiff's peace). Such after-hours calling is inconsistent with reasonable telemarketing practice and, in some instances, violates FCC telemarketing regulations that restrict solicitation calls after 9:00 PM local time.

10. **Use of Rotating and "Spoofed" Caller ID Numbers:** The calls originated from at least **five different phone numbers** with Colorado area codes 303 and 720, including numbers ending in -1213, -8897, -4506, -2219, and -7734 (examples). On information and belief, these numbers were either **rotated** or "spoofed" by Defendant to mask its identity and to evade call blocking. When Plaintiff attempted to call back some of these numbers, he was unable to reach a live person or the numbers were not in service, indicating the use of spoofed or unassigned outbound numbers — a tactic reported in similar TCPA cases against lending companies . In *Horsley v. LendingPoint, LLC*, for example, a plaintiff alleged that a lender placed unsolicited calls using "spoofed" phone

numbers that the consumer could not call back . Likewise here, Defendant hid behind changing caller IDs to frustrate Plaintiff's efforts to identify or block the calls.

11. **Content of Calls:** When Plaintiff answered a few of these calls, either he heard a short pause and click before a live agent came on the line, or a prerecorded voice was used to initiate the call. In one instance on November 12, 2025, Plaintiff answered and heard a **prerecorded message** stating he was pre-approved for an auto loan refinancing and instructing him to "press 1 to speak with a representative." After pressing 1, Plaintiff was connected to a live iLending representative who attempted to solicit Plaintiff's business. In other instances, Plaintiff let the calls go to voicemail; some calls left voicemails with either a fragment of an automated message or nothing at all (consistent with auto-dialer behavior). The use of a prerecorded announcement and the brief delay before a human came on the line are telltale indicators of an **automatic telephone dialing system** ("ATDS") or predictive dialer being used to place the calls. Plaintiff never provided **express written consent** to receive such automated telemarketing calls, and in any event, had explicitly revoked any form of consent prior to these calls.

12. **No Emergency or Legitimate Purpose:** The calls were not made for emergency purposes (47 U.S.C. § 227(b)(1)(A)). They were **purely telemarketing**, aiming to sell Defendant's services. Plaintiff had no ongoing business relationship with iLending at the time of these calls; any initial inquiry had been withdrawn. There was therefore no **established business relationship** that could exempt the calls from TCPA scruples (and even if there had been, Plaintiff's explicit opt-out on November 8, 2025 terminated any such relationship for telemarketing purposes).

13. **Harassment and Nuisance:** Defendant's relentless calls (often multiple per day, including early morning and late evening calls) constituted a nuisance and invasion of Plaintiff's privacy. Plaintiff experienced frustration, stress, and distraction from these unwanted interruptions. He had to stop what he was doing to deal with ringing phones, check messages, and attempt to block numbers — only for Defendant to call from new numbers. The calls intruded upon Plaintiff's seclusion at home and tied up his cellular line. Congress recognized these harms in enacting the TCPA, noting that automated or unwanted calls are a "nuisance and invasion of privacy" to consumers . Plaintiff's experience is precisely the kind of harm the TCPA was designed to prevent.

14. **Defendant's Knowing or Willful Conduct:** Defendant's conduct was knowing and willful. Plaintiff not only revoked any prior consent but also did so in the exact manner instructed by Defendant (by texting "STOP"). Defendant even **confirmed the opt-out**, evidencing its knowledge that Plaintiff withdrew permission. Yet Defendant chose to continue calling. Each call after the confirmed "STOP" constitutes a knowing violation of the TCPA's prohibitions on calling consumers who have opted out. Moreover, the pattern of using multiple numbers and possibly automated dialing reflects a deliberate strategy, not an accidental one. Defendant's willful disregard of Plaintiff's opt-out is underscored by the fact that Plaintiff verbally told an iLending agent during one call that he had opted out and to stop calling — an instruction which was likewise ignored on subsequent calls. Because the violations were willful and/or knowing, Plaintiff seeks treble damages as permitted under 47 U.S.C. § 227(b)(3) and (c)(5).

15. **Related Litigation and Industry Practice:** Defendant's practices are not isolated. Similar companies have faced TCPA lawsuits for comparable conduct, confirming the

applicability of the TCPA to these facts and putting industry participants on notice. For instance, in *Bishop v. LendingPoint LLC*, No. 2:25-cv-00551 (E.D. Wis. 2025), a Wisconsin consumer sued a loan company for repeated unsolicited calls in violation of the TCPA . That case was allowed to proceed in federal court, reinforcing that companies engaging in telemarketing to Wisconsin residents can be held to account under federal law. In *Horsley v. LendingPoint, LLC*, No. 1:22-cv-00202 (N.D. Ga.), a class action complaint alleged that a lender placed prerecorded voice calls without consent and **refused to honor "stop calling" requests**, even using spoofed numbers to continue its campaign . Likewise, iLending's use of spoofed/rotating numbers and its refusal to honor Plaintiff's STOP request demonstrate a pattern of willful violation. Defendant either knew its conduct was illegal or displayed reckless disregard for the TCPA's requirements, as evidenced by these well-publicized enforcement actions in the industry.

16. **Anticipating Likely Defenses:** Plaintiff preemptively addresses several defenses iLending might raise, to clarify that none excuse the conduct:

    o **"Prior Express Consent" Defense:** Defendant may claim Plaintiff consented to calls by providing his number. However, any such consent was clearly **revoked** when Plaintiff texted "STOP" and received confirmation on November 8, 2025. Under the TCPA, consumers have the right to revoke consent by any reasonable means, including text message opt-outs . The FCC's 2012 *SoundBite* ruling specifically held that a consumer may revoke consent to receive texts by sending an opt-out request, and the Third Circuit in *Gager v. Dell Fin. Servs.* relied on that ruling to confirm that TCPA consent can indeed be revoked . After revocation, Defendant had no valid consent – every call placed thereafter was unauthorized.

Defendant's confirmation of the unsubscribe underscores that it understood Plaintiff's intent to revoke. Thus, any "prior consent" defense fails as a matter of law once revocation occurred.

- **"Scope of STOP Request" Defense:** Defendant might argue that Plaintiff's "STOP" text only revoked consent for text messages, not phone calls. This argument is meritless in context. Unlike situations where a company's system clearly instructs different keywords for different channels (e.g. a "STOP" that only opts out of one messaging campaign unless "STOPALL" is used, as in *Stamper v. Manus-Northwestern Oral Health Ctr.*, No. 21-cv-01398, 2025 WL 2044093 (N.D. Ill. Jul. 17, 2025) ), here Defendant's opt-out confirmation to Plaintiff did **not** limit the scope of the unsubscribe. The confirmation simply stated that Plaintiff was unsubscribed, without indicating it was restricted to texts. A reasonable consumer (and caller) would understand this as a universal opt-out from all telemarketing communications. Defendant had no basis to assume Plaintiff wanted calls to continue when he explicitly opted out. In *Stamper*, the court upheld a narrow interpretation of a "stop" text only because the defendant had clearly communicated that a different keyword was required to halt all communications . In the present case, Defendant gave no such instruction or distinction. Therefore, Plaintiff's "STOP" message "reasonably and clearly" conveyed his desire to cease **all** communications . Any defense that Plaintiff failed to use some specialized method to stop calls is unfounded – he followed the exact opt-out mechanism provided, which should have ceased all telemarketing.

- **"Spoofed Calls by Others" Defense:** Defendant may suggest that some or all of the calls originated from scammers or third parties spoofing iLending's name or number without its involvement. Plaintiff acknowledges the calls came from various numbers, but importantly, in calls that he answered, the agents identified themselves as from iLending or offered iLending's services. The content of the calls (offers of loan refinancing, references to Plaintiff's application or pre-approval) clearly indicates the calls were made by or on behalf of Defendant. Defendant cannot escape liability by hiding behind spoofed caller IDs . If Defendant outsourced telemarketing to a third-party vendor that used number-spoofing, Defendant is still vicariously liable for the actions taken to benefit its business. Moreover, using false or misleading caller ID information is itself a sign of willful misconduct, not a defense. As one legal commentary notes, **TCPA violators intentionally mask their identity with call spoofing technology** to evade enforcement . That describes Defendant's conduct here. In short, the calls are attributable to Defendant, and spoofing the numbers does not shield Defendant from TCPA liability.
- **"Established Business Relationship"** or **"Inquiry" Defense:** Defendant might point to Plaintiff's initial inquiry or application to claim an **established business relationship (EBR)** that could allow calls despite general Do-Not-Call rules. However, even if an EBR had existed briefly, it was unequivocally terminated by Plaintiff's opt-out request. The TCPA's internal do-not-call regulations require telemarketers to honor a consumer's request to stop calls **immediately** and permanently, notwithstanding any EBR (47 C.F.R. § 64.1200(d)(3)). Once

Plaintiff said "STOP," Defendant was obligated to place Plaintiff on its internal do-not-call list and cease further outreach. No EBR can persist after a clear opt-out. Furthermore, an EBR is irrelevant to the **§ 227(b)** claims (which prohibit autodialed/prerecorded calls without consent); an EBR is only a potential defense to **§ 227(c)** do-not-call claims. In this case, the sheer volume and timing of calls far exceeded what could be considered a follow-up to a single inquiry. These were **telemarketing solicitations** post-revocation, not mere informational calls. Thus, any EBR defense is defeated by Plaintiff's revocation and the nature of the calls.

- **Other Defenses:** Plaintiff notes that he is not required to anticipate every defense in this pleading. However, to preclude unnecessary motion practice: Plaintiff affirms that he **never provided prior express written consent** for autodialed or prerecorded telemarketing calls, as required under 47 C.F.R. § 64.1200(f)(9) for solicitation calls. Any documents Defendant may produce purporting to show consent will be closely scrutinized against the heightened consent standards for telemarketing. Additionally, Plaintiff's claims are timely (calls occurred in November 2025, well within the TCPA's 4-year statute of limitations). Plaintiff has standing under Article III, as he suffered concrete harm (nuisance, invasion of privacy, wasted time, and battery depletion of his phone) due to Defendant's unwanted calls, consistent with the traditional harms recognized in TCPA cases (see *Van Patten v. Vertical Fitness*, 847 F.3d 1037, 1043 (9th Cir. 2017), noting that unwanted calls cause concrete privacy injuries).

17. In summary, Defendant's actions violated the core provisions of the TCPA designed to protect consumer privacy. Plaintiff seeks relief for these violations, as detailed in the causes of action below.

## Causes of Action

**Count I – Violation of 47 U.S.C. § 227(b)** (Illegal Calls Using Automated System or Prerecorded Voice)

18. **Incorporation of Allegations:** Plaintiff repeats and realleges the foregoing paragraphs 1–17 as if fully set forth herein.

19. **Autodialed/Prerecorded Calls to Cell Phone Without Consent:** The TCPA, in 47 U.S.C. § 227(b)(1)(A)(iii), makes it unlawful to make any call to a cellular telephone number using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice without the prior express consent of the called party (except for emergency purposes or exempted calls not applicable here). Defendant violated this provision with each call placed to Plaintiff's cell phone after consent was revoked on November 8, 2025.

20. **Use of ATDS:** Upon information and belief, Defendant used an ATDS as defined in 47 U.S.C. § 227(a) and applicable FCC orders, in that the dialing equipment had the capacity to store or produce telephone numbers to be called, and to dial such numbers automatically. The facts supporting this inference include: (a) the high volume and frequency of calls (25 calls over 10 days, often multiple times per day), suggesting a computerized campaign rather than manual dialing; (b) the use of **predictive dialing characteristics**, such as a pause or dead air when Plaintiff answered, before a live agent

came on (indicating the call was auto-dialed and then routed to an agent); and (c) the "spoofed" rotating Caller ID numbers, which is a common tactic in mass dialing operations to increase answer rates and avoid blocking . These facts indicate the calls were made using a dialing system that falls under the TCPA's autodialer ban.

21. **Use of Prerecorded Voice:** At least one of Defendant's calls to Plaintiff (see ¶11 above) utilized an artificial or prerecorded voice message. The presence of a generic prerecorded announcement ("you have been pre-approved for a loan; press 1…") before transferring to a representative means that call was placed using a **prerecorded voice** without Plaintiff's consent. Each call employing a prerecorded or artificial voice is independently prohibited by § 227(b)(1)(A) absent prior express consent.

22. **Lack of Consent:** Plaintiff never provided Defendant with prior express consent to receive autodialed or prerecorded voice calls on his cell phone for marketing purposes. Even if any prior consent had been given incidentally (e.g., by providing his number in an inquiry), such consent was fully **revoked** as of November 8, 2025 when Plaintiff opted out . From that point forward, Defendant had neither express consent nor permission to call. Indeed, Defendant acknowledged the revocation by confirming Plaintiff's unsubscribe request, yet persisted in calling. Thus, every call made after revocation was "without the prior express consent of the called party," squarely violating § 227(b)(1)(A).

23. **Knowing and Willful Violations:** Defendant's violations of § 227(b) were committed willfully and/or knowingly. Defendant was aware that autodialed/prerecorded telemarketing calls require consent, and was aware that Plaintiff had revoked any consent. By intentionally continuing the calling campaign, Defendant showed a deliberate or reckless disregard of the TCPA. Accordingly, the Court should **increase the amount**

   **of statutory damages** up to three times, as provided by 47 U.S.C. § 227(b)(3) for willful or knowing violations.

24. **Injury:** Defendant's unlawful calls have harmed Plaintiff in the ways described above, including invasion of privacy, aggravation, and disruption. Plaintiff is therefore entitled to recover **statutory damages** for each violative call, and any other relief the Court deems appropriate.

25. **Relief Requested (Count I):** Under 47 U.S.C. § 227(b)(3), Plaintiff prays for: (a) an award of **statutory damages of $500** for each call in violation of § 227(b); (b) an enhancement of that award to **$1,500 per call** for each violation found to be willful or knowing; (c) injunctive relief prohibiting Defendant from placing autodialed or prerecorded voice calls to any number that has revoked consent or is on the national Do-Not-Call registry, and requiring Defendant to implement proper opt-out honoring procedures; and (d) any other relief the Court deems just and proper.

**Count II – Violation of 47 U.S.C. § 227(c)** (Calls to a Person Who Opted Out/Do-Not-Call Violations)

26. **Incorporation of Allegations:** Plaintiff repeats and realleges the allegations in paragraphs 1–17 above as if fully set forth herein.

27. **TCPA "Do-Not-Call" Protections:** The TCPA's subsection (c) directed the FCC to promulgate regulations to protect consumer privacy rights to avoid unwanted telephone solicitations. Under 47 C.F.R. § 64.1200(c)(2), it is unlawful for a person or entity to initiate more than one "telephone solicitation" within a 12-month period to a residential telephone number that is registered on the National Do Not Call Registry. Additionally,

under 47 C.F.R. § 64.1200(d), telemarketers must maintain an internal "do-not-call list" and **honor any do-not-call request** from a consumer. If a consumer requests not to receive calls (whether by orally saying so or via any reasonable method), that request must be recorded and honored within a reasonable time (not exceeding 30 days) and thereafter, the consumer's number should not be called for telemarketing purposes. The TCPA gives a private right of action to persons who receive more than one call within a year in violation of these FCC regulations (47 U.S.C. § 227(c)(5)).

28. **Telemarketing to a Number on the National DNC Registry:** Upon information and belief, Plaintiff's cellular number --**67 was registered on the National Do Not Call Registry prior to November 2025. (Plaintiff registered his number on the national DNC list in 2023 as a general privacy measure.) Defendant's solicitation calls were thus presumptively illegal under 47 C.F.R. § 64.1200(c)(2), which prohibits calls to a **DNC-listed number** absent an established business relationship or prior express invitation. As pleaded, any EBR or consent that may have existed was revoked, and thus no exemption applied. Between Nov. 8 and Nov. 17, 2025, Defendant placed 25 solicitation calls to Plaintiff – far exceeding the "more than one call within 12 months" threshold in the statute. Each pair of calls constitutes a separate violation of § 227(c) and its implementing rules.

29. **Violation of Internal Do-Not-Call Rules:** Separately, even if Plaintiff's DNC registration were disputed, Defendant unquestionably violated the **internal do-not-call regulations** (47 C.F.R. § 64.1200(d)). Plaintiff's "STOP" text on Nov. 8, 2025 and additional oral requests during calls were explicit do-not-call requests. Defendant was obligated by law to honor those requests by ceasing telemarketing to Plaintiff's number

and to log Plaintiff's number on its internal opt-out list . Instead, Defendant ignored the request and **continued calling 25 more times** in the ensuing days. This behavior violates 47 C.F.R. § 64.1200(d)(3), which states that a consumer's do-not-call request must be honored within a reasonable time (max 30 days) and that such request **"shall be honored for 5 years"**. Defendant's nearly immediate resumption of calls – sometimes within hours of the opt-out – is a flagrant breach of this requirement. Therefore, Defendant's conduct violated regulations prescribed under 47 U.S.C. § 227(c).

30. **Willful/Knowing Violations:** The persistence of calls post-opt-out, especially with knowledge of Plaintiff's unsubscribe, demonstrates willfulness. Defendant's **compliance failures** (no effective internal DNC adherence) and use of spoofing to evade detection further indicate knowing misconduct. Under 47 U.S.C. § 227(c)(5), the Court may award up to **$1,500 for each such violation** if found willful or knowing.

31. **Injury:** Plaintiff suffered the types of harm § 227(c) was meant to address – repeated, unwanted solicitations after expressing a desire for peace. These violations caused disturbance and invaded Plaintiff's right to be free from incessant telemarketing.

32. **Relief Requested (Count II):** Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff prays for: (a) an award of **statutory damages of $500** for each call placed in violation of the do-not-call regulations (each call after the first, or alternatively each call after the opt-out, being a separate violation); (b) **treble damages of $1,500 per call** for each violation that the Court finds was committed willfully or knowingly; (c) a permanent injunction requiring Defendant to **cease all unsolicited telemarketing to Plaintiff** and to implement TCPA-compliant internal do-not-call procedures (including training of personnel and monitoring

of compliance) for the protection of other consumers; and (d) any further relief deemed just and proper.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

a. **Damages:** An award of statutory damages in the amount of **$500 for each violation** of 47 U.S.C. § 227(b) and § 227(c), and **$1,500 for each such violation found to be willful or knowing**, totaling **$37,500** for the 25 calls (at $1,500 each) or such greater amount as discovery may reveal if additional violations are proven .

b. **Injunctive Relief:** A permanent injunction prohibiting Defendant and its agents from engaging in the unlawful conduct complained of herein. This includes enjoining Defendant from placing autodialed or prerecorded voice calls to any cellular number without prior express written consent, **enjoining** Defendant from calling any consumer after that consumer has revoked consent or requested not to be called, and requiring Defendant to maintain and adhere to appropriate **do-not-call policies** as mandated by 47 C.F.R. § 64.1200(d). Plaintiff seeks an injunction to ensure that he (and others similarly situated) will not be harassed by such calls in the future.

c. **Attorneys' Fees and Costs:** As Plaintiff is self-represented at this time, no attorneys' fees are requested. However, Plaintiff seeks recovery of **costs of suit**, including the filing fee, service of process fees, and any other expenses incurred in prosecuting this action, to the extent allowed by law or in the Court's discretion.

## Jury Demand

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a **trial by jury** on all issues so triable. The Plaintiff believes a jury is best suited to determine the factual questions of Defendant's conduct, willfulness, and the appropriate assessment of statutory damages for these telemarketing abuses.

## Verification

I, **Nathaniel Bacchus**, am the Plaintiff in this action. I declare under penalty of perjury that the factual allegations contained in the foregoing complaint are true and correct to the best of my knowledge, information, and belief. I understand that willful false statements may lead to sanctions or prosecution.

Dated: November 17, 2025.

**Nathaniel Bacchus** (Plaintiff)

1308 Mica Road APT 7 Madison, Wisconsin 53719

Email: Natebacchus10@gmail.com

*(Pro Se Plaintiff)*